UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

A&P TECHNOLOGY, INC.,      :      Case No. 1:17-cv-534
                    :
        Plaintiff,     :
                    :      Judge Timothy S. Black
vs.                  :
                    :
PHILLIP LARIVIERE, *et al.*,    :
                    :
        Defendants.    :

**ORDER RESOLVING PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION
AND EXPEDITED DISCOVERY (Doc. 2) AND
DEFENDANT'S MOTION FOR PREDISCOVERY IDENTIFICATION
OF TRADE SECRETS (Doc. 13)**

This civil action is before the Court on Plaintiff's motion for a preliminary

injunction and expedited discovery (Doc. 2), Defendants' motion for prediscovery

identification of trade secrets (Doc. 13), and the parties' responsive memoranda (Docs. 9,

16, 18, 20, 22, and 24).

## I.      BACKGROUND

### A.    Factual history

Plaintiff A&P Technology, Inc. ("A&P") is a corporation with a principal place of

business in Cincinnati, Ohio, that specializes in the production of precision braided

textiles.  (Doc. 2, at 3).  These textiles are used by Plaintiff's client corporations for use

in various applications and have been utilized in the aerospace, military, and energy

markets, among others.  (*Id.*).  Plaintiff relies upon proprietary technology in the

production of its textiles, including custom braiding equipment that Plaintiff has designed

1

and built over many years. (*Id.*).

Defendant Phillip Lariviere was employed by Plaintiff as an Application Engineer for eight years prior to his termination on April 27, 2015. (*Id.*; Doc. 9, at 3). During his time working for Plaintiff, Lariviere was given access to, and training concerning, Plaintiff's confidential information including its braiding processes. (Doc. 2-1, at 7).[1] Lariviere was exposed not only to technical information regarding braid manufacturing, but also to market knowledge of Plaintiff's products, sales strategies, and pricing models. (Doc. 2, at 8).

While Lariviere was employed with A&P, he executed agreements stating that he would agree to keep A&P's confidential information secret both during and after his employment, and that he would only use A&P's confidential information as authorized by the company. (Docs. 2-3, 2-4). Upon Lariviere's termination, he executed a release reaffirming his commitment to protect A&P's confidential information in the future, despite his separation from the company. (Doc. 2-5, at 3). In addition to his commitment to protect A&P's confidential information, Lariviere's agreement with A&P also included the following "covenant not to compete":

> In the event the Employee's employment with the Company terminates for any reason, either voluntarily or involuntarily, the Employee hereby agrees that, for a period of two (2) years after the termination of employment, the Employee will not directly or indirectly, alone or with others, engage in or have any interest in any person, firm, corporation or business (whether as a shareholder, principal. partner, employee, trustee, officer, director, agent, security holder, creditor. agent security holder, creditor, independent contractor, landlord, consultant or otherwise) that engages in the braiding

---

[1] The phrases "confidential information" and "trade secrets" are used interchangeably throughout this Order.

industry, or otherwise competes with the operations of [A&P], including but not necessarily limited to, braiding for reinforcement in composites, inflatable structures, safety-related devices, human and animal health-related devices, thermal electrical or mechanical insulators or conductors.

(Doc. 2-4, at 3).

Following his termination, in June 2015 Lariviere began working for non-party General Electric Aviation ("GE") in Cincinnati, where he had worked prior to joining A&P. (Doc. 9, at 3). However, based on a desire to move, Lariviere continued to search for new employment through a third party recruiter. (*Id.*). Plaintiff ultimately accepted an offer to work for Defendant Highland Industries, Inc. ("Highland") in Statesville, North Carolina as a Senior Project Engineer. (*Id.* at 3–4; Doc. 1, at 12). Lariviere's noncompete agreement had expired before he began working with Highland on May 15, 2017. (Doc. 9, at 3).

Highland "is primarily in the business of curing and finishing composite structures based on customer specifications, using multiple processing methodologies including braiding, overbraiding, filament winding, lamination, and press molding." (Doc. 9, at 4). Highland is affiliated with A&P's largest competitor, non-party company Eurocarbon. (Doc. 1, at 11). In the past, Highland and A&P have bid against each other for the same third party contracts. (*Id.* at 11–12). Accordingly, Highland is a competitor to A&P.

A&P filed the complaint in this case on August 11, 2017. (Doc. 1). A&P is claiming that Lariviere is in breach of his contract to protect A&P's confidential information by working for a direct competitor in the braiding industry. The complaint accordingly raises claims of breach of contract against Lariviere, tortious interference

with contractual relationships against Highland, and tortious interference with business relationships, misappropriation of trade secrets, and unjust enrichment against both defendants. (*Id.* at 15–25). A&P seeks injunctive relief against both defendants preventing them from continuing to work together. (*Id.*).

## B. The motions before the Court

On the same day the complaint was filed, A&P filed a motion for preliminary injunction and expedited discovery. (Doc. 2).[2] The motion argues that a preliminary injunction enjoining Lariviere from working in his current role at Highland is necessary because of the risk the status quo poses to A&P's carefully guarded confidential information. (*See generally id.*). In addition, the motion requests that Defendants be enjoined from soliciting any of A&P's customers and that Defendants also be required to provide a full and independent accounting and relinquishing of all of A&P's confidential information and/or documents in their possession. (*Id.* at 24–25). Defendants oppose this motion.

---

[2] The "expedited discovery" portion of the motion, which requested that Plaintiffs be permitted to quickly obtain certain basic discovery from Defendants, was not opposed by Defendants. In regard to the expedited discovery portion of Plaintiff's motion, Defendants merely requested that they be permitted to conduct similar discovery and that discovery occur under an agreed Protective Order. (Doc. 9, at 20). The Court has no objection to the parties' mutual desire to move quickly through those areas of discovery that are not in dispute, and so this portion of the motion (Doc. 2) shall be granted. For the sake of clarity, the remaining discussion about Doc. 2, which concerns only the disputed portion of the motion, shall refer to the motion simply as a motion for preliminary injunction. The Court also notes that while the parties appear to agree that discovery can be conducted in an expedited manner, they disagree about what discovery should be permitted at this time. The Court shall address these issues in the portion of this Order ruling on Defendants' motion for prediscovery identification of trade secrets (Doc. 13). *See* Part III, *infra*.

On October 11, 2017, Defendants filed a motion for prediscovery identification of trade secrets. (Doc. 13). That motion requests that the Court order Plaintiff to "provide Defendants' counsel—after the entry of an appropriate protective order but before discovery begins—a detailed list with narrative descriptions, for each Defendant, of each trade secret that A&P claims the Defendants have: (1) misappropriated; and (2) threatened misappropriation." (*Id.* at 10). Plaintiff opposes this motion.

Both Plaintiff's motion for preliminary injunction and expedited discovery and Defendant's motion for prediscovery identification of trade secrets are fully briefed and ripe for review. The Court shall address each in turn.

## II.     PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### A.     Standard of review

Federal Rule of Civil Procedure 65(a)–(b) permits a party to seek injunctive relief when the party believes that it will suffer immediate and irreparable injury, loss, or damage. Nevertheless, an "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *NE. Ohio*

*Coal. For Homeless & Serv. Emp. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999,

1099 (6th Cir. 2006). These four considerations are factors to be balanced, not

prerequisites that must be met. *McPherson v. Michigan High Sch. Athletic Ass'n, Inc*.,

119 F.3d 453, 459 (6th Cir. 1997). "Although no one factor is controlling, a finding that

there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l*

*Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

> **B.** **Analysis**
>
> > **1.** **Preliminary Injunction Factors**
> >
> > > **a.** **Likelihood of success on the merits**

The first factor to consider is "whether the plaintiff has demonstrated a strong

likelihood of success on the merits." *Certified Restoration Dry Cleaning Network v.*

*Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007). While a party is not required to prove its

entire case to establish success on the merits, a plaintiff must show "more than a mere

possibility of success." *Id.*

All of the claims in Plaintiff's complaint are based on the foundational premise

that, by working with Highland, Lariviere is exposing A&P's confidential information to

Highland in violation of his agreement to keep that information secret. Therefore, A&P

must be able to demonstrate a substantial likelihood of success on the merits of its claims

alleging misappropriation of trade secrets in violation of the Uniform Trade Secrets Act

to require the imposition of a preliminary injunction. (*See* Doc. 1, at 19–21 (citing OHIO

REV. CODE ANN. §§ 1333.61, *et seq.* (West 2016))).

A&P does not contend, at this early stage in the case, before any discovery has occurred, that A&P possesses any evidence that Lariviere has divulged any of A&P's confidential information to Highland.  However, A&P is requesting injunctive relief under the Ohio Uniform Trade Secrets Act (OUTSA), which allows for injunctive relief to be granted upon a showing of *threatened* misappropriation of trade secrets.  OHIO REV. CODE ANN § 1333.62(A) (West 2016) ("Actual *or threatened* misappropriation [of trade secrets] may be enjoined.") (emphasis added).

A&P's motion relies upon the "inevitable disclosure doctrine" to support its claim that Lariviere's employment with Highland is a threatened misappropriation of A&P's confidential information.  The inevitable disclosure doctrine states that "a threat of harm warranting injunctive relief can be shown by facts establishing that an employee with detailed and comprehensive knowledge of an employer's trade secrets and confidential information has begun employment with a competitor of the former employer in a position that is substantially similar to the position held during the former employment." *Procter & Gamble Co. v. Stoneham*, 747 N.E.2d 268 (Ohio Ct. App. 2000).

Defendants argue that Lariviere is not in a substantially similar position to his former role at A&P and that Lariviere does not have detailed and comprehensive knowledge of A&P's trade secrets.  These arguments lack merit.  Defendants' argument that Lariviere's role at Highland differs from his former role at A&P is primarily based on the claim that A&P and Highland are not competitors because, while A&P primarily makes "raw material" braid products that are used by third party companies in their products, Highland makes "finished parts" for use by end user third party companies.

(Doc. 9, at 10–11).  The Court appreciates the distinction, but the fact that both companies' main products rely heavily on braiding technology means that any proprietary information regarding A&P's braiding processes could potentially be a significant boon to Highland's business.  Additionally, Highland did not dispute A&P's assertion that Highland has been invited to bid for A&P's customers in the past (Doc. 1, at 11–12); therefore, Lariviere's technical position at Highland potentially has him attempting to win the same contracts he was attempting to win at A&P.  Highland's argument that Lariviere lacks detailed knowledge of A&P's trade secrets is similarly without merit.  This argument relies on the dual assertions that Lariviere took no documents with him when leaving A&P and that Lariviere could not have retained relevant technical information after not working for A&P for over two years.  (*Id.* at 11).  A&P disputes the former assertion (albeit without concrete evidence), and the latter assertion is not credible given Lariviere's eight years with A&P, learning every aspect of its business.

Courts applying the inevitable disclosure doctrine have recognized that when employees have intimate knowledge of their employer's confidential business information and trade secrets, it is virtually impossible for those employees to leave the company and work for a competitor, but compartmentalize their knowledge and avoid using their former employer's confidential business information and trade secrets at their new job.  *See Dexxon Digital Storage, Inc. v. Haenszel*, 161 Ohio App.3d 747, 755, 2005-Ohio-3187, 832 N.E.2d 62, 68, ¶ 52 (5th Dist.) (applying the inevitable disclosure doctrine in the absence of a non-compete agreement where six former employees left a

data storage company and started a competitor, with intimate knowledge of their former employer's operations); *Litigation Mgt., Inc. v. Bourgeois*, 8th Dist. Cuyahoga No. 95730, 2011-Ohio-2794, ¶ 32 (presumption of irreparable harm warranting injunctive relief was proper where former COO with intimate knowledge of the business, its pricing strategies, its customer preferences, and its operations set up a competing business and hired away former co-workers); *Dayton Superior Corp. v. Yan*, 2012 WL 5497804, at *7 (S.D. Ohio Nov. 13, 2012) (granting a temporary restraining order against former employees, who had proprietary knowledge of products, manufacturing process and specialized chemical methods, information regarding product's strengths and weaknesses, marketing strategy, pricing, and customer needs); *Goken America, LLC v. Bandepalya*, 2014 WL 6673830, at *1 (S.D. Ohio Nov. 24, 2014), *appeal dismissed* (Nov. 13, 2015) (granting a preliminary injunction because the former employee was "working at a substantially similar position with specialized engineering knowledge"); *Firstenergy Sols. corp. v. Flerick*, 2012 WL 6649201, at *3 (N.D. Ohio Dec. 20, 2012), *aff'd*, 521 F. App's 521 (6th Cir. 2013) (granting plaintiff's motion for a preliminary injunction against the defendant, who had maintained his own clients and had specific knowledge of plaintiff's pricing and sales strategy); *Kemper Mortg., Inc. v. Russell*, 2006 WL 4968120, at *3 (S.D. Ohio May 4, 2006) (granting a preliminary injunction against the former assistant to the director of operations at one of the plaintiff's branches that knew information regarding plaintiff's customer retention program, customer leads, financial and marketing plans, and structure of compensation for its sales people).

However, it is not the case that every former employee with specialized technical knowledge can be enjoined from working for a competitor, especially in a case such as this where a noncompete agreement was fully honored and significant time has passed since the employee left his former job. In cases such as the one at present, reviewing courts look to the particular facts of the case for circumstantial evidence of misappropriation, intent to misappropriate, nefarious activities or attempts to circumvent any of the parties' agreements, demonstrated acts of dishonesty, evidence of deleting or copying files, improper solicitation, or other such evidence to weigh the need for injunctive relief.

For example, in *Polymet Corporation v. Newman et al.*, a case cited by both parties in the briefings for the present motion for preliminary injunction, this Court granted a preliminary injunction based on the inevitable disclosure doctrine against a former high level employee with detailed knowledge of the plaintiff corporation's confidential information who had never signed a noncompete agreement. 2016 WL 4449641 (S.D. Ohio Aug. 24, 2016). However, the Court's analysis in that case relied in part upon heavy circumstantial evidence that the defendant employee had misappropriated or intended to misappropriate the plaintiff's trade secrets, including that: (1) the former employee made plans to form his own competing corporation before leaving and starting it the same summer he left; (2) the former employee communicated "about the prospective new company" with an employee of one of the plaintiff's suppliers before leaving; (3) the former employee recommended the plaintiff company terminate a distributor relationship when he "was already planning his own company"

who his new company then bought from; and (4) the new company bought from the same supplier "for the same purpose" when he left.. *Id.* at *4. Other courts granting relief in the absence of actual evidence of misappropriation of trade secrets have relied heavily on similar circumstantial evidence of dishonesty and intent to misappropriate (or the lack thereof) in determining whether the inevitable disclosure doctrine merits injunctive relief.[3]

In contrast to *Polymet* and the other cases cited above, there is absolutely no evidence, circumstantial or otherwise, that Lariviere has behaved in any manner other than completely above board in complying with his contractual obligations to A&P. In support of the motion for preliminary injunction, A&P has submitted evidence chronicling several publicly available Facebook posts made by Lariviere (on both his own Facebook page and on a page ostensibly belonging to his dog), as well as texts made between Lariviere and an A&P employee. (Docs. 16-2; 16-3; 16-5; 16-10 through 16-18). A&P asserts that these communications cumulatively demonstrate both Lariviere's contempt for A&P and his likeliness to divulge A&P's trade secrets. Having carefully reviewed the communications in question, the Court is in no doubt as to the former

---

[3] *Compare PrimePay, LLC v. Barnes*, 2015 WL 2405702, *32, 37 (E.D. Mich. May 20, 2015) (rejecting preliminary injunction where no "demonstrated acts of dishonesty," "no evidence that even one" of the 27 former clients identified by the plaintiff had been solicited, or that confidential information was used); *Devicor Med. Prods. v. Reed*, 2013 WL 1315037, *17 (S.D. Ohio Mar. 29, 2013) (denying preliminary injunction where no evidence of improper solicitation and "no evidence that would cast doubt on [] assurances" that "he has not and will not engage in any effort" to divert business); *with Goken Am., LLC v. Bandepalya*, 2014 WL 6673830, at *6 (S.D. Ohio Nov. 24, 2014) (granting injunction where former employee copied files onto an external hard drive kept in a password protected folder that "a reasonable business owner would not want a competitor to know"); *Litigation Mgt., Inc. v. Bourgeois*, 2011-Ohio-2794, ¶ 32 (8th Dist. 2011) (presumption of irreparable harm warranting injunctive relief where former COO hired away former coworkers).

assertion, but does not consider there to be any significant evidence of the latter. The communications, created mostly after the commencement of legal action by A&P, demonstrate Lariviere's contempt for A&P and particularly with his former direct supervisor. They also, perhaps unwisely, openly demonstrate Lariviere's belief that the present case is without merit and is an unnecessary hassle.[4] However, Lariviere's mockery of the former employer who terminated him and then sued him is not demonstrative of any actual effort or inclination to violate his contractual obligation to protect the confidentiality of A&P's trade secrets. Defendants in this case have unequivocally stated that Lariviere "[has] not provided, nor [does he] intend to provide, nor [has he] been asked to provide, any information related to A&P to Highland[.]" (Doc. 9-2, at 3). There is no significant circumstantial evidence to counter this assertion.

Lariviere waited out his two year noncompete before moving to another employer in the industry, and he found his current job through a third party recruiter. (Doc. 9, at 3). Granting A&P's motion based on the facts of this case would declare that the inevitable disclosure doctrine is available to restrict a former employee's right to contract in any scenario where the employee had agreed to maintain the confidentiality of trade secrets. That is not the case. "An employee possessed of his former employer's trade secrets '[has] the right to take employment in a competitive business, and to use his knowledge (other than trade secrets) and experience, for the benefit of the new employer.'"

---

[4] As an example: In one of the Facebook posts in question, which was posted on the same day that A&P sent a demand letter to Defendants accusing Lariviere of misappropriating trade secrets, Lariviere "shared" an older picture of himself and some friends swimming with their dogs. His newly created caption read "This was fun. Trade Secret: just throw the dog in the water and they will love it." (Doc. 16-12, at 2).

*Hydrofarm, Inc. v. Orendorff*, 2008-Ohio-6819, ¶¶ 21 (10th Dist. 2008) (quoting *B.F. Goodrich v. Wohlgemuth*, 117 Ohio App. 493, 500 (9th Dist. 1963)).

Accordingly, while the inevitable disclosure doctrine can be used to demonstrate a threat of the misappropriation of trade secrets sufficient to grant preliminary injunctive relief under the OUTSA, there must be some substantive support of a legitimate threat of disclosure in the facts of the case beyond the mere fact that a former employee has agreed to protect confidential information. At this stage, prior to any discovery, there is no such substance here. Therefore, the first of the preliminary injunction factors weighs in favor of denying the preliminary injunction.

### b.    Irreparable harm

Next, a court must consider whether the plaintiff will suffer irreparable injury without the injunction. *Certified Restoration*, 511 F.3d at 550. "To demonstrate irreparable harm, the plaintiffs must show that . . . they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet*, 305 F.3d at 578.

Plaintiff argues that "damages arising from the misappropriation of trade secrets is irreparable and impossible to calculate." (Doc. 2, at 19 (quoting *Dayton Superior Corp. v. Yan*, 2012 WL 5497804, at 5 (S.D. Ohio Nov. 13, 2012) (citations omitted))). This is a correct statement of law. However, any claim of irreparable harm for the purposes of this motion is undermined by the Court's finding that there is not a significant likelihood of success on the merits at this stage. *See supra* Part II.B.1.a.

13

Accordingly, the irreparable harm factor weighs in favor of denying the preliminary injunction.

### c.    Harm to nonmoving parties/the public interest

The final factors in the injunctive relief analysis are whether granting the injunction would cause harm to others and/or serve the public interest. "The irreparable injury [the plaintiffs] will suffer if their motion for injunctive relief is denied must be balanced against any harm which will be suffered by [others] as a result of the granting injunctive relief." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).

Plaintiffs argue that Defendants' harm will be relatively minor if the requested injunctive relief is granted, stating that Lariviere could work for Highland in some capacity that has nothing to do with braiding or, in the alternative, that Lariviere could move to another company not in the braiding industry and that Highland could hire anyone not obligated to protect A&P's confidential information. (Doc. 2, at 22). However, this understates the harm to Defendants that would be caused by an injunction, particularly Lariviere. Lariviere and his wife both left their old jobs and moved from Ohio to North Carolina on the basis of Lariviere's employment with Highland. (Doc. 9, at 19). Lariviere and his wife recently closed on a house in North Carolina and are currently in contract to sell their house in Cincinnati. (Doc. 9-2, at 3). Interfering with Defendants' employment relationship at this stage could cause significant financial difficulties for Lariviere moving forward.

Moreover, granting injunctive relief in this case would have chilling and widespread implications for the right of parties to freely contract.  A&P wishes to prevent Lariviere from working in the braiding industry, despite the fact that he honored a two year non-compete agreement, and, moreover, A&P's request for relief does not seem to indicate that there would be any natural end to this prohibition.[5]  Essentially, by granting A&P's request for relief here, the Court would be endorsing the proposition that any employee with specialized knowledge that agreed not to disclose that knowledge can be forbidden from working for a direct competitor indefinitely.  Such a proposition would undermine the "strong public interest in fair and free competition."  *Bailey v. Chattem, Inc.*, 684 F.2d 386, 391 (6th Cir. 1982).

Plaintiff argues that "there a strong public interest in 'preserving the sanctity of contractual relations and preventing unfair competition.'"  (Doc. 16, at 16 (quoting *Park-Ohio Indus. v. Carter*, 2007 WL 470405 (E.D. Mich. Feb. 8, 2007))).  This is undoubtedly a compelling interest; however, its relevance to this motion is mitigated by the Court's previous finding that Plaintiff has failed to demonstrate a significant threat of any "unfair competition" at this stage of the proceedings.  *See supra* Part II.B.1.a.

Accordingly, the harm to others/public interest factor weighs in favor of denying the motion for preliminary injunction.  Because each of the preliminary injunction factors

---

[5] The Court also notes that the noncompete between Lariviere and A&P seems to specifically contemplate and impliedly permit Lariviere's future employment for a competitor in the braiding industry: ". . . the Employee hereby agrees that, for a period of two (2) years after the termination of employment, the Employee will not directly or indirectly, alone or with others, engage in or have any interest in any person, firm, corporation or business . . . *that engages in the braiding industry*, or otherwise competes with the operations of [A&P] . . ." (emphasis supplied).

weighs against the granting of a preliminary injunction, Plaintiff's motion for preliminary injunction shall be denied.

### III. DEFENDANTS' MOTION FOR PREDISCOVERY IDENTIFICATION OF TRADE SECRETS

#### A. Standard of Review

District courts retain "broad discretion" in establishing the timing and sequence of discovery. Fed. R. Civ. P. 26(d)(2); Fed. R. Civ. P. 26(c). They also have broad discretion through their inherent power to manage their dockets to "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." *StoneEagle Servs., Inc. v. Valentine*, 2013 WL 9554563, at *3 (N.D. Tex. June 5, 2013); *Un. Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 248 (W.D. Tex. 2013); Fed. R. Civ. P. 16(c)(2)(L).

#### B. Analysis

##### 1. Prediscovery identification of trade secrets is required in this case

Defendants' motion claims that Plaintiff's pleadings fail to sufficiently identify A&P's trade secrets that are allegedly threatened by Lariviere's employment with Highland. Accordingly, Defendants request that this Court, prior to allowing any discovery in this case, order A&P to submit, under the protection of a forthcoming Protective Order, a list outlining in detail the trade secrets that A&P alleges have been misappropriated by Defendants.

Given the nature of and burdens imposed by trade secret cases, many courts across the country recognize the "growing consensus" in favor of "requiring those plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue." *StoneEagle Servs.*, 2013 WL 9554563, at *2; *see also Safety Today, Inc. v. Roy*, Case No. 2:12-cv-510, Doc. 184, at *6–7 (S.D. Ohio Feb. 11, 2014); *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680–81 (N.D. Ga. 2007). These courts have found that plaintiffs in trade secret misappropriation cases "bear[] the burden of identifying and demonstrating that the information is protected . . . and . . . must demonstrate that [they have] actively sought to maintain that information's secrecy." *84 Lumber Co., L.P. v. Houser*, 936 N.E.2d 131, 140 (11th Dist. 2010). "Only the [plaintiff] will know what portion that myriad of [their] information known to its employees can legitimately be claimed as a trade secret," and "[t]he burden is . . . not upon the defendant to guess at what they are." *Safety Today*, Case No. 2:12-cv-510, Doc. 184, at *7 (quoting *Xerox Corp. v. IBM*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974)). A "[f]ailure to identify . . . trade secrets with sufficient specificity" renders courts "powerless" to enforce them. *Porous Media Corp. v. Midland Brake, Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999) (citing *AMP, Inc. v. Fleischacker*, 823 F.2d 1199, 1203 (7th Cir. 1987)).

On the other hand, some federal courts in recent years have declined to require the plaintiff to identify its alleged trade secrets before being allowed to conduct discovery. *See, e.g., Global Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.,* 2012 WL 3884939, at *7 (D. Nev. Sept. 6, 2012) (affirming magistrate judge's decision not to require the plaintiff to identify its trade secrets "because of their voluminosity" and

noting that "a listing of every trade secret would draw an objection from Defendant that they must be narrowed, leading to additional discovery disputes and delays, and that a protective order against disclosure would protect Defendant's interests"); *Montgomery v. eTreppid Techs., LLC,* 2008 WL 2277118, at *10–11 (D. Nev. May 29, 2008) (permitting eTreppid to take discovery on its trade secret counterclaim against Montgomery without first specifically identifying its own trade secrets at issue).

The divergent rulings from various federal courts on the issue of whether to require prediscovery identification of trade secrets reinforces the idea that rulings on discovery limitations are a case-by-case decision where courts must use their broad discretion based heavily on the distinct circumstances of any particular action. In reaching a decision on the issue, a presiding court should balance a plaintiff's general right to broad relevant discovery with the special implications raised by a trade secret misappropriation claim. These competing interests were clearly outlined by the Northern District of Georgia in *DeRubeis v. Witten Technologies, Inc.*:

> [C]ourts have identified at least three policies which support allowing the trade secret plaintiff to take discovery prior to identifying its claimed trade secrets. First, courts have highlighted a plaintiff's broad right to discovery under the Federal Rules of Civil Procedure. Second, the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating. Finally, if the trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a "Catch–22": Satisfying the requirement of detailed disclosure of the trade secrets without knowledge [of] what the defendant is doing can be very difficult. If the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret. If instead it is too specific, it may miss what the defendant is doing.

. . .

    In contrast, courts have identified at least four policies which support
    delaying trade secret discovery until the trade secret plaintiff has
    sufficiently described the trade secrets at issue.  First, if discovery on the
    defendant's trade secrets were automatically permitted, lawsuits might
    regularly be filed as "fishing expeditions" to discover the trade secrets of a
    competitor. . . . Second, until the trade secret plaintiff has identified the
    secrets at issue with some specificity, there is no way to know whether the
    information sought is relevant. . . . [T]hus, requiring the plaintiff to
    sufficiently identify its trade secrets prior to allowing discovery on the
    defendant's trade secrets helps the court to determine the outer permissible
    bounds of discovery and prevents needless exposure of the defendant's
    trade secrets.

    Third, it is difficult, if not impossible, for the defendant to mount a defense
    until it has some indication of the trade secrets allegedly misappropriated.
    Often, a trade secret defendant will defend the claim by showing that it
    does not use the claimed secret or that the information is in fact not secret.
    Until the defendant knows what information is at issue, it cannot attempt to
    rebut the plaintiff's charges of misappropriation.  Finally, requiring the
    plaintiff to state its claimed trade secrets prior to engaging in discovery
    ensures that it will not mold its cause of action around the discovery it
    receives.

244 F.R.D. 676, 680–81 (N.D. Ga. 2007) (citations omitted).

    After reviewing the facts of this case, the Court finds it appropriate to require

Plaintiff to specifically identify those trade secrets that have allegedly been

misappropriated prior to requiring Defendant to divulge its own trade secrets through

discovery.  Much as with Plaintiff's motion for preliminary injunction, the lack of

circumstantial evidence of misappropriation, or any form of deceit on the part of either

Defendant, is a significant factor in the Court's determination that the factors in favor of

the early identification of trade secrets outweigh the factors against such a requirement.

It is too early to tell whether Defendants are hiding their misappropriation of Plaintiff's

trade secrets or whether Plaintiff's lawsuit is an attempt to use litigation as a means of discovering the trade secrets of a competitor. However, given that the Court has already found no strong case for requiring preliminary injunctive relief against Defendants, it follows that the Court should therefore err on the side of caution in protecting Defendants' trade secrets against unnecessary disclosure.

A&P also claims that being required to specifically identify allegedly misappropriated trade secrets prior to discovery is inappropriate because A&P would be placed in the "catch-22" identified in the previously-quoted *DeRubeis* ruling—specifically, that A&P would be forced to either list out every trade secret it could possibly think of (thereby wasting everyone's time by being purposefully overbroad) or risk a situation where Defendants' misconduct escapes Plaintiff's notice. This fear is unfounded. Plaintiffs will be required to identify suspected misappropriated trade secrets prior to Defendants divulging their own trade secrets because doing so will appropriately preserve the balance between Plaintiff's need for discovery into its legitimate claims and Defendants' need to protect the unnecessary divulgence of trade secrets in the face of frivolous litigation. However, Plaintiff can amend its list of allegedly appropriated trade secrets as needed based on information gained through discovery. No list submitted at the beginning of discovery will necessarily prohibit Plaintiff from aggressively protecting any trade secrets Defendants are found to have misappropriated.

That said, Defendants' request that no discovery should be permitted to occur prior to Plaintiff's identification of its allegedly misappropriated trade secrets is a bridge

too far.  Plaintiff's surreply to Defendants' motion[6] rightly points out that in most of the cases cited in favor of requiring prediscovery identification of trade secrets, that identification was required before the discovery of any of the defendants' trade secrets, but was not required before any discovery could occur.  (Doc. 22, at 3–5).  There is significant basic relevant discovery that can assist Plaintiff in preparing its case that does not necessarily implicate any of Defendants' protected trade secrets.  Given the broad permissible scope of discovery afforded by Rule 26 of the Federal Rules of Civil Procedure, Plaintiff must be permitted to presently conduct discovery on those matters that are not impacted by the special consideration federal courts have carved out for trade secrets in a trade secret misappropriation case.

## 2. Plaintiff has not already sufficiently identified its allegedly misappropriated trade secrets

A&P claims that, even assuming that a plaintiff in a misappropriation case must specifically identify any trade secrets at issue prior to discovery, it has already done so in its prior filings.  This argument is without merit.  The following are the "trade secrets" A&P has identified as possibly misappropriated by Lariviere:

> … "proprietary technology, engineering, research and development procedures and materials, braiding machinery, source code, processes, industry tools, and marketing materials," "processing technology, design technology, pricing models, industry research, and customer lists[,]" and

---

[6] Due to the parties' request that the Court expedite its ruling on the pending motions in this case (*see* 12/15/17 Notation Order), Plaintiff's motion for leave to file instater surreply brief in opposition to Defendants' motion for prediscovery identification of trade secrets (Doc. 22) was not fully briefed.  The Court has read the proposed surreply attached to Plaintiff's motion (Doc. 22) and found the information contained therein to be helpful in assisting with the adjudication of the pending motion for prediscovery identification of trade secrets.  As the underlying motion is resolved in this Order, Plaintiff's not fully briefed motion for leave to file a surreply shall be denied as moot.

the applications for A&P's unique process for placing fibers in a reinforcement form that is optimized for carrying the loads that a part will see in service in the aerospace, military, marine, infrastructure, energy, transportation, prosthetic and orthotic, and recreation industries.

(Doc. 18, at 5–6 (citations to other portions of the record omitted)).

A&P's list of "trade secrets" is insufficient for two reasons. First, this list is not a list of actual trade secrets but rather a list of categories of business information that for the most part are in no way unique to A&P. The Sixth Circuit Court of Appeals has explained that plaintiffs pursuing a threatened misappropriation theory—including under the inevitable disclosure doctrine—fail to state a "cognizable" claim when they merely rely on "generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets." *Degussa Admixtures, Inc. v. Burnett*, 277 F. App'x 530, 535 (6th Cir. 2008). Terms such as "engineering," "research and development procedures and materials," and "marketing materials" could be applied to almost any corporation in existence, and do not in any way allow Defendants to properly craft a defense around the alleged misappropriation of trade secrets. Terms such as "the applications for A&P's unique process for placing fibers in a reinforcement form…" are slightly more specific than the other generic terms given by Defendant, but still fail to answer the question of exactly what technology Lariviere is alleged to have taken with him when he left A&P.

Second, this list is insufficient because it was made as part of the public record. Sixth Circuit precedent holds that "information that has been publicly disclosed . . . is no longer eligible for trade–secret protection." *Allied Erecting & Dismantling Co. v. Genesis*

*Equip. & Mfg.*, 511 F. App'x 398, 409 (6th Cir. 2013). Any listing of trade secrets that are entitled to protection can only be done under a Protective Order; no such order has been issued in this case. Plaintiff appears to understand this, which is why the "trade secrets" that have been identified to this point are generic categories of information that do not give a reader any actual insight into what has allegedly been misappropriated.

Accordingly, Defendants' motion for preliminary identification of trade secrets is meritorious to the extent that it seeks to protect the divulgence of Defendants' trade secrets prior to a specific identification of the allegedly misappropriated trade secrets in this case. The motion shall be granted in part.

## IV. CONCLUSION

Accordingly, for the reasons outlined above:

1) Plaintiff's motion for preliminary injunction and expedited discovery (Doc. 2) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's request for a preliminary injunction is **DENIED**. Plaintiff's unopposed request for expedited discovery is **GRANTED**. The parties may conduct expedited, reciprocal discovery to the extent they agree on discoverable information.

2) Defendants' motion for prediscovery identification of trade secrets (Doc. 13) is **GRANTED IN PART**. Defendants' request that Plaintiff be required to submit a specific, narrative list of allegedly misappropriated trade secrets prior to discovery is **GRANTED** to the extent that Defendant need not disclose any information relating to its own trade secrets until Plaintiff has identified its own trade secrets. However, Defendant must engage in good faith discovery that is not related to its own trade secrets forthwith. Plaintiff's identification of the trade secrets at issue in this case may only occur after the parties have been granted a Protective Order. The Court anticipates that an agreed Protective Order is forthcoming (*see* 12/15/17 Notation Order);

3) Plaintiff's motion for leave to file instater surreply brief in opposition to Defendants' motion for prediscovery identification of trade secrets (Doc. 22) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Date:  12/27/17

_Timothy S. Black_
Timothy S. Black
United States District Judge